UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTONIO ZYNELL HENDERSON,

                    Petitioner,

v.                                          Case No. 3:04-cv-206-J-32HTS

MR. SOLOMON, et al.,

                    Respondents.

_____

### ORDER[1]

### I. Status

Petitioner Henderson initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on March 22, 2004. Petitioner challenges a 2000 state court (Putnam County, Florida) conviction for possession of a firearm by a convicted felon and violation of probation for possession of

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

cocaine with intent to sell on the following grounds: (1) the trial court erred in denying his motion for judgment of acquittal where the evidence was completely circumstantial and did not exclude every hypothesis of innocence; (2) the trial court erred in denying his motion for a new trial where the State relied upon perjured testimony to secure the conviction and the prosecutor made an inappropriate comment during closing argument; (3) the trial court erred in denying his requested jury instructions on circumstantial evidence; (4) the trial court erred by failing to comply with the Florida Supreme Court's October 15, 1998, new rule of law governing stipulation as a prior convicted felon in a felon in possession of a firearm prosecution announced in <u>Brown v. State</u>, 719 So.2d 882 (Fla. 1998); (5) ineffective assistance of trial counsel with respect to the stipulation; (6) ineffective assistance of trial counsel for failure to conduct a proper pretrial investigation; (7) ineffective assistance of trial counsel for failure to file a motion to disclose the confidential informant's identity and failure to file a motion to suppress the evidence; (8) ineffective assistance of trial counsel for failure to properly investigate and file a motion for recusal; (9) denial of a fair trial due to the State's failure to disclose exculpatory evidence as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); and, (10) illegal sentence due to the trial court's written sentence, which failed to comport with the trial court's oral pronouncement of the sentence.

Respondents filed a Response to Petition (Doc. #13) (hereinafter Response). In support of their Response, they submitted exhibits.[2] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. See Court's Order to Show Cause and Notice to Petitioner (Doc. #6). Petitioner has responded. See Petitioner's Reply to Response (Doc. #16). This case is now ripe for review.

## II. Procedural History

On October 5, 1998, Petitioner was placed on probation for possession with intent to sell or deliver a controlled substance. Ex. A at 1-4. While on probation, Petitioner was arrested on February 18, 1999, for two counts of possession of a controlled substance, possession of paraphernalia, and possession of a firearm by a convicted felon. Id. at 5-8, 29-30. On January 5, 2000, a jury trial was held for the possession of a firearm by a convicted felon charge only, and Petitioner was found guilty as charged. Id. at 98, Verdict. On February 17, 2000, Petitioner entered a no contest plea to the violation of probation (unlawful possession with intent to sell or deliver a controlled substance). Id. at 126. Petitioner was sentenced, on February 17, 2000, to fifteen years in prison for the violation of probation and eighteen years as a habitual felony offender for the possession of a firearm by a

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

convicted felon, to run concurrently.  <u>Id</u>. at 124-36.  The trial transcript has been submitted by Respondents as part of the record. Ex. B (hereinafter Tr.).

On direct appeal, Petitioner raised the following three claims: (1) the trial court erred in denying his motion for judgment of acquittal where the evidence was completely circumstantial and did not exclude every reasonable hypothesis of innocence; (2) the trial court erred in denying his motion for new trial where the State relied upon perjured testimony to secure the conviction and the State was also guilty of prosecutorial misconduct in closing argument, which was highly prejudicial to Petitioner; and, (3) the trial court erred in denying Petitioner's requested jury instruction on circumstantial evidence.  Ex. C, Initial Brief of Appellant.  The State filed an Answer Brief, and Petitioner filed a Reply Brief.  <u>Id</u>.  On October 13, 2000, the appellate court affirmed with the following written opinion.

> During the search of Ms. Alexander's apartment, Henderson was found in bed with her and two children.  The children were hers by Henderson and she was expecting his additional child.  Ms. Alexander lived in an apartment which prohibited occupancy by convicted felons and Henderson was one.  When questioned by the officers conducting the search, Henderson denied living in the apartment and denied owning the clothing hanging in the closets and the duffle bag which was also located in the closet and contained firearms and documents, including a Xeroxed copy of his social security card and driver's license. Henderson was arrested for possession of a firearm by a convicted felon and, because he denied owning

4

any clothes in the apartment, was taken to
jail in his boxer shorts.  He was convicted of
the charge.

Henderson now claims on appeal that the
State failed to rebut his hypothesis of
innocence which was that the duffle bag and
its contents belonged to Ms. Alexander's other
lover.  This was her testimony.  We believe,
however, that the documents belonging to
Henderson found in the duffle bag are
sufficient evidence inconsistent with the
defendant's theory of the events to send the
issue to the jury.

Ms. Alexander's testimony was so
inconsistent and she was so thoroughly
impeached that, although we agree that the
prosecutor made an inappropriate comment
during closing argument to the effect that he
did not believe her, the prosecutorial
misconduct was harmless.

Finally, we find that the court did not
abuse its discretion in refusing to give the
separate jury instruction on circumstantial
evidence in this case.

AFFIRMED.

Henderson v. State, 769 So.2d 477, 477-78 (Fla. 2000); Ex D.  The

mandate was issued on November 1, 2000.  Ex. D.

On March 18, 2002, Petitioner filed a *pro se* motion for post

conviction relief pursuant to Fla. R. Crim. P. 3.850, in which he

raised the following claims: (1) denial of a fair trial due to the

trial court's failure to comply with the Florida Supreme Court's

October 15, 1998, new rule of law governing stipulation as a prior

conviction felon in a felon in possession of a firearm prosecution,

announced in Brown v. State, 719 So.2d 882 (Fla. 1998); (2)

ineffective assistance of trial counsel for failure to notify Petitioner of the stipulation; (3) ineffective assistance of trial counsel for failure to conduct a proper pretrial investigation; (4) ineffective assistance of trial counsel for failure to investigate, failure to file a motion to disclose the confidential informant's identity, and failure to file a motion to suppress evidence; (5) ineffective assistance of trial counsel for failure to properly investigate and file a motion for recusal; (6) denial of a fair trial due to the State's failure to disclose exculpatory evidence as required by Brady v. Maryland; and, (7) illegal sentence since the trial court's written sentence did not comport with the trial court's oral pronouncement of the sentence.  Ex. E at 1-52.

An evidentiary hearing was conducted.  Id. at 577-690, 691-806, 807-55, Transcript of the Evidentiary Hearing (hereinafter EH Tr.).  The trial court denied the motion on April 4, 2003.  Ex. E at 558-62.  The appellate court per curiam affirmed on January 27, 2004, and the mandate was issued on February 13, 2004.  Ex. G; Henderson v. State, 865 So.2d 512 (Fla. 5th DCA 2004).

The Petition for Writ of Habeas Corpus, filed in this Court on March 22, 2004, is timely filed within the one-year period of limitation.  See Court's Order (Doc. #11); 28 U.S.C. § 2244(d).

### III. Evidentiary Hearing

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").  No evidentiary proceedings are required in this Court.  High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV. Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA). Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996. AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact.  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Henderson v. Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), cert. denied, 543 U.S. 811 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court adjudications:  "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness."  Van Poyck v.

9

Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per
curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003);
Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that
the Ohio Court of Appeals' decision was not "contrary to" or an
"unreasonable application" of clearly established federal law and
stressing "the limits imposed on federal habeas review by 28 U.S.C.
§ 2254(d)").

The "contrary to" and "unreasonable application" clauses have
independent meaning and provide separate bases for federal habeas
review:

> "Under the 'contrary to' clause, a
> federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite
> to that reached by this Court on a question of
> law or if the state court decides a case
> differently than this Court has on a set of
> materially indistinguishable facts."
> Williams, 529 U.S. at 412-13, 120 S.Ct. at
> 1523 (O'Connor, J., concurring). The
> "contrary to" clause "suggests that the state
> court's decision must be substantially
> different" from the controlling legal
> precedent. Fugate v. Head, 261 F.3d 1206,
> 1216 (11th Cir. 2001), cert. denied, --- U.S.
> ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002)
> (quoting Williams, 529 U.S. at 405, 120 S.Ct.
> at 1519). A state court's decision that
> applies the correct legal rule would not fit
> within the "contrary to" clause even if the
> federal court might have reached a different
> result relying on the same law. See Williams,
> 529 U.S. at 404-06, 120 S.Ct. at 1519-20
> (O'Connor, J., concurring).
>
>          . . . .
>
> "Under the 'unreasonable application' clause,
> a federal habeas court may grant the writ if

> the state court identifies the correct
> governing legal principle from this Court's
> decisions but unreasonably applies that
> principle to the facts of the prisoner's
> case." <u>Williams</u>, 529 U.S. at 414, 120 S.Ct.
> at 1523 (O'Connor, J., concurring).  In
> deciding this issue, the federal court should
> consider whether the state court's application
> of the law was objectively unreasonable and
> should not apply the subjective "all
> reasonable jurists" standard. <u>Id</u>. at 409-10,
> 120 S.Ct. at 1521-22.  The Supreme Court
> recently adhered to its pronouncements in
> <u>Williams</u>, stating that "we stressed in
> <u>Williams</u> that an unreasonable application is
> different from an incorrect one." <u>Bell v.</u>
> <u>Cone</u>, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
> L.Ed.2d 914 (2002).  The Court further noted
> that "a federal habeas court may not issue a
> writ under the unreasonable application clause
> 'simply because that court concludes in its
> independent judgment that the relevant state-
> court decision applied clearly established
> federal law erroneously or incorrectly.'" <u>Id</u>.
> (quoting <u>Williams</u>, 529 U.S. at 411, 120 S.Ct.
> at 1522 (O'Connor, J., concurring)).

<u>Wellington v. Moore</u>, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." <u>McIntyre v. Williams</u>, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

<u>Washington v. Crosby</u>, 324 F.3d 1263, 1265 (11th Cir.), <u>cert.</u>
<u>denied</u>, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted).  If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

13

For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." See Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.[3]

Van Poyck, 290 F.3d at 1322-23 (footnotes omitted).

---

[3] However, "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

14

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner claims that the trial court erred in denying his motion for judgment of acquittal where the evidence was completely circumstantial and did not exclude every hypothesis of innocence.  This claim was raised on direct appeal (Ex. C), and the appellate court, in addressing the merits of the claim, stated in pertinent part:

> During the search of Ms. Alexander's apartment, Henderson was found in bed with her and two children.  The children were hers by Henderson and she was expecting his additional child.  Ms. Alexander lived in an apartment which prohibited occupancy by convicted felons and Henderson was one.  When questioned by the officers conducting the search, Henderson denied living in the apartment and denied owning the clothing hanging in the closets and the duffle bag which was also located in the closet and contained firearms and documents, including a Xeroxed copy of his social security card and driver's license. Henderson was arrested for possession of a firearm by a convicted felon and, because he denied owning any clothes in the apartment, was taken to

15

jail in his boxer shorts.  He was convicted of
the charge.

Henderson now claims on appeal that the
State failed to rebut his hypothesis of
innocence which was that the duffle bag and
its contents belonged to Ms. Alexander's other
lover.  This was her testimony.  We believe,
however, that the documents belonging to
Henderson found in the duffle bag are
sufficient evidence inconsistent with the
defendant's theory of the events to send the
issue to the jury.

Henderson, 769 So.2d at 477-78; Ex D.

Thus, the appellate court adjudicated the claim on the merits.
Therefore, this ground should be addressed applying the deferential
standard for federal court review of state court adjudications, as
required by AEDPA.  The Court must next consider the "contrary to"
and "unreasonable application" components of the statute.  "It is
the objective reasonableness, not the correctness per se, of the
state court decision that we are to decide."  Brown v. Head, 272
F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978
(2002).

Upon a thorough review of the record and the applicable law,
it is clear that Petitioner is not entitled to relief on the basis
of this claim because the state court's adjudication of the claim
was not contrary to clearly established federal law, did not
involve an unreasonable application of clearly established federal
law, and was not based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceedings.

After the State rested its case, defense counsel moved for a judgment of acquittal on the ground that "[i]t is solely a -- and wholly a circumstantial evidence case as to whether the Defendant possessed control of or knowledge of a firearm." Tr. at 153. After hearing argument from the prosecutor and defense counsel, the trial judge concluded: "I think it's a jury question and I'm going to deny the Motion for Judgment of Acquittal." Id. at 159. After the defense rested its case, defense counsel again moved for a judgment of acquittal, stating that "there's no evidence whatsoever Mr. Henderson, even in the light most favorable to the State, ever entered that master bedroom, so we'll renew our motion." Id. at 216. The prosecutor argued that there was enough evidence to submit to the jury. Id. The trial judge denied the motion for judgment of acquittal. Id.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citation omitted). In Jackson v. Virginia, the United States Supreme Court articulated the standard of review in a federal habeas corpus proceeding where a petitioner claims he has been convicted upon insufficient evidence: "[t]he constitutional test for the sufficiency of the evidence is 'whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Felker v. Thomas, 52 F.3d 907, 909 (11th Cir. 1995) (quoting Jackson v. Virginia, 443 U.S. at 319), cert. denied, 516 U.S. 1133 (1996).

Unlike Florida law, this federal habeas court applies federal law which holds that the "Court need not exclude every reasonable hypothesis of innocence or find guilt to be the only reasonable conclusion." United States v. Garcia, 13 F.3d 1464, 1473 (11th Cir.) (citing United States v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989)), cert. denied, 512 U.S. 1226 (1994). Furthermore, "[i]t is clear that the Jackson standard of review is '[e]qually applicable to direct or circumstantial evidence.'" Martin v. State of Alabama, 730 F.2d 721, 725 (11th Cir. 1984) (quoting United States v. Wuagneux, 683 F.2d 1343, 1358 (11th Cir. 1982)). In addition, the state court's sufficiency determination is due deference.

Thus, after a thorough and exhaustive review of the trial transcript and the record, it is clear that the State presented sufficient evidence against Petitioner and that Petitioner had the opportunity to cross examine the witnesses to challenge their credibility. Further, Petitioner had the opportunity to call his own witnesses and did call Tameka Alexander to testify.

It was the jury's duty to decide which evidence was reliable and credible. Resolution of conflicts in testimony is the province

of the jury.  The jury assessed the credibility of the witnesses and weighed the evidence.  Here, the jury was present in the courtroom, observed all of the witnesses and chose to believe the State's witnesses rather than Petitioner's witness.  The relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of possession of a firearm by a convicted felon.  The Court, here, answers that question in the affirmative. Based on the evidence presented at the trial, any rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty of possession of a firearm by a convicted felon.  Thus, Petitioner's claim is without merit.  See Response at 4-5.

### B. Ground Two

As ground two, Petitioner claims that the trial court erred in denying his Motion for New Trial where the State relied upon perjured testimony to secure the conviction and the prosecutor made an inappropriate comment during closing argument.  As noted by the Respondents, this is a state law issue and is not cognizable on federal habeas corpus review.  See Response at 5.  The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United

19

States.[4] <u>Coleman v. Thompson</u>, 501 U.S. 722, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be available.  <u>See</u> <u>Jones v. Goodwin</u>, 982 F.2d 464, 471 (11th Cir. 1993); <u>Krasnow v. Navarro</u>, 909 F.2d 451, 452 (11th Cir. 1990).  The Supreme Court has often held that federal habeas relief does not lie for errors of state law.  Clearly, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).

This claim was raised on direct appeal (Ex. C), and the appellate court, in addressing the merits of the claim, stated in pertinent part:

> Ms. Alexander's testimony was so inconsistent and she was so thoroughly impeached that, although we agree that the prosecutor made an inappropriate comment

---

[4] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §2254(a).

> during closing argument to the effect that he
> did not believe her, the prosecutorial
> misconduct was harmless.

Henderson, 769 So.2d at 478; Ex D.

Thus, the appellate court adjudicated the claim on the merits. Therefore, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In the Motion for New Trial (Ex. A at 103), defense counsel stated that the prosecutor committed misconduct during closing argument by personally vouching for the evidence and stating that she personally disbelieved Ms. Alexander's testimony.[5]  Ex. A at 103; Tr. at 257.  Further, in the Motion for New Trial, defense counsel argued in pertinent part:

---

[5] In closing argument, the prosecutor stated: "Ladies and gentlemen, if you disbelieve Ms. Alexander's testimony, as I obviously do --."  Tr. at 257.  The trial judge sustained defense counsel's objection, and granted defense counsel's motion to strike the comment from the record.  Id.

> The evidence was not overwhelming. A
> reasonable hypothesis of innocence was
> presented by the evidence that the mother of
> Defendant's children placed the copies of
> Defendant's identification and related
> paperwork in the bag contained [sic] the
> firearms in order to establish his correct
> name with the appropriate welfare authorities.
> The State's theory that this was inconsistent
> with the evidence rested in large part upon
> the proof of "consciousness of guilt"
> evidence, i.e. that Defendant denied that any
> of the men's clothing at the apartment
> belonged to him. This evidence was bolstered
> by the testimony of Detective Merchant and
> Detective Tingley that Defendant was
> transported to the county jail wearing only
> his boxer shorts on a cold February night.
> This information was divulged for the first
> time on the witness stand, was not included or
> documented in the police reports, and was not
> reasonably foreseeable to be adduced. That
> testimony was false. The Defendant wore pants
> to the Putnam County Jail, green in color, and
> also was wearing a belt when booked into the
> Putnam County Jail. The clear implication,
> both from the testimony, and as argued by the
> State, that the Defendant's actions in
> refusing to allow himself to be associated
> with the clothes in the closet containing the
> guns was consciousness of guilt. This
> consciousness of guilt implication coupled
> with the marginal evidence of possession as
> well could have erroneously led the jury to
> convict.

Ex. A at 103-04.

On February 1, 2000, the trial judge conducted a hearing on

the Motion for New Trial. Ex. B. Thereafter, on February 10,

2000, the trial judge denied the Motion for New Trial, stating that

any improper comments by the prosecuting attorney were objected to

and sustained by the court and did not deny Petitioner a fair

22

trial.  Ex. A at 112.  Further, the trial judge stated in pertinent part:

> The most compelling evidence of the Defendant's guilt came from the following evidence: in the canvas bag with the two guns was a copy of the Defendant's driver's license, social security card, and Equifax credit report; also located in the house, in which the Defendant claimed not to live, was an original driver's license in the kitchen cabinet; the home belonged to the mother of his three children who was at trial pregnant with another of his children; the canvas bag was from Kissimmee/St. Cloud, which is in close proximity to Orlando, the Defendant's city of employment; men's clothes were scattered throughout the house; someone was attempting to leave the house[,] as the search warrant was being executed[,] through a bedroom window, which was pushed open with the screen pushed out.  The Defendant stated he did not live in the home and that any items in the home did not belong to him.  The officers testified that he would not wear any clothes or shoes from the house and that he went to the jail in his boxer shorts.  There was testimony that the Defendant's car was searched, and his girlfriend testified that she would not let him in the house covered in fiberglass.  Consequently, she would make him take off his clothes and shoes prior to entering the house.  Any new evidence showing that the Defendant was at the booking desk at the jail with pants and a belt, no shoes, is not exculpatory and does not conflict with either version of events presented by the Defense or the State.
>
> Pursuant to *State v. Law*, 559 So.2d 187 (Fla. 1989), the State did present competent evidence which is inconsistent with the Defendant's theory of innocence.  The Defense's theory was that Tomeka Alexander was the sole resident of the home with her two children.  The apartment was public assistance housing, where convicted felons are not

23

allowed to reside. She stated that the Defendant visited her and the children, but resided either in Orlando or with his mother on Palm Avenue, Palatka. She further claimed that her father, a migrant worker out of state, gave her the guns because she was afraid of where she was living. She claimed to have taken the papers found in the canvas bag from the Defendant's truck the week earlier in order to show them to DCAF and correct the last name of her children. The Defense stressed both that the State had not proven ownership of the guns nor where the Defendant actually resided. The following is competent evidence which rebuts the Defense's version of events:

a. Miss Alexander is the mother of his three children and at the time of trial was pregnant with a fourth child by Mr. Henderson;

b. The Defendant was unable to purchase any weapons, since he has been a convicted felon without having his civil rights restored since 1991;

c. Miss Alexander acknowledged that Mr. Henderson could not be on the lease for the apartment because convicted felons could not live there;

d. Miss Alexander's father is a migrant worker out of state who doesn't come to Florida often;

e. The canvas bag supposedly given to Miss Alexander by her father comes from the surrounding area where Mr. Henderson worked at the time of the offense;

f. The canvas bag was located in the master bedroom closet, on the top shelf pushed further back in the closet. This closet was filed [sic] with items of men's clothing as well as items of children's clothing and assorted men's and women's shoes;

g. Miss Alexander was only shown to have been convicted of one crime of dishonesty and, with three young children in her home, would have no reason to attempt to escape the second story apartment, as someone did (as proven by both the testimony of the officers and from the photographs taken of the scene prior to the search);

h. Miss Alexander stated she took the papers to present to DCAF; however they were located in the top back of the master bedroom closet, neither in her purse on the dresser nor in any other more accessible place in the home;

i. Although Miss Alexander stated she had not lived with Mr. Henderson since 1997, a duplicate license in the name of Antonio Henderson with the Defendant's picture issued on February 27, 1998[,] was found in her kitchen. This was a separate and distinct license from the copy found in the canvas bag, and there appeared to be a men's wallet by the front door[;]

j. Miss Alexander claimed there was a pair of pants by the front door to her home[,] which she made the Defendant take off upon entering the house; however, overall photos of the apartment prior to the search do not reveal any such pants. All of the State's testimony also reflects that the Defendant refused to take anything from the apartment, claiming he did not live there.

In most of these examples, Miss Alexander's testimony conflicts with both the officer[s'] testimony and a common sense interpretation of the evidence. Taken together, the photographs[,] State's testimony, and cross-examination of Miss Alexander rise to the level of competent evidence which is inconsistent with the Defense's theory that Mr. Henderson did not live in the home and did not know of the guns.

Ex. A at 112-15.  Petitioner's ground two is without merit.  Id.;
Response at 5-8.

### C. Ground Three

As ground three, Petitioner claims that the trial court erred
in denying his requested jury instructions on circumstantial
evidence.  As noted by the Respondents, this is a state law issue
and is not cognizable on federal habeas corpus review.  See
Response at 8.  The purpose of a federal habeas proceeding is
review of the lawfulness of Petitioner's custody to determine
whether that custody is in violation of the Constitution or laws or
treaties of the United States.  See Section VI.B., Ground Two.

This claim was raised on direct appeal (Ex. C), and the
appellate court, in addressing the merits of the claim, stated in
pertinent part:

> Finally, we find that the court did not abuse
> its discretion in refusing to give the
> separate jury instruction on circumstantial
> evidence in this case.

Henderson, 769 So.2d at 478; Ex D.

Thus, the appellate court adjudicated the claim on the merits.
Therefore, this ground should be addressed applying the deferential
standard for federal court review of state court adjudications, as
required by AEDPA.  Upon a thorough review of the record and the
applicable law, it is clear that Petitioner is not entitled to
relief on the basis of this claim because the state court's
adjudication of the claim was not contrary to clearly established

federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

During the charge conference, defense counsel requested a special jury instruction on circumstantial evidence.  Tr. at 218. Defense counsel acknowledged that the giving of the special jury instruction was within the trial judge's discretion.  <u>Id</u>.  The trial judge denied defense counsel's request for the special instruction, concluding that he would give the standard jury instructions since the Supreme Court had stated a jury instruction on circumstantial evidence "becomes confusing."[6]  <u>Id</u>. at 220. Therefore, the trial judge did not err in denying the requested instruction; the jury was properly instructed with the standard jury instructions on reasonable doubt and burden of proof.  <u>Id</u>. at 259-68.  Petitioner's ground three is without merit.  Response at 8-9; Ex. C, Answer Brief at 36-38.

---

[6] The Supreme Court of Florida deleted the circumstantial evidence instruction from the standard jury instructions, finding that where the jury is properly instructed on the standard of reasonable doubt, the circumstantial evidence instruction was "confusing and incorrect."  <u>In re Standard Jury Instructions</u>, 431 So.2d 594, 595 (Fla. 1981) (quoting <u>Holland v. United States</u>, 348 U.S. 121, 139-40 (1954)).  The deletion of the instruction does not totally prohibit the instruction if the trial judge, in his discretion, opines that such is necessary under the peculiar facts of a specific case.  <u>Id</u>.

**D. Ground Four**

As ground four, Petitioner claims that the trial court erred by failing to comply with the Florida Supreme Court's October 15, 1998, new rule of law governing stipulation as a prior convicted felon in a felon in possession of a firearm prosecution announced in <u>Brown v. State</u>, 719 So.2d 882 (Fla. 1998).[7] Petitioner raised this ground in his Rule 3.850 motion, and the trial court stated in pertinent part:

> In his motion, the Defendant first claims that he was denied a fair trial by the trial court due to its acceptance of a stipulation of Defendant's prior felony without the Defendant's personal acknowledgment of the stipulation on the record. **As this ground should, and could, have been raised on direct appeal, it is not cognizable in a post conviction motion.**

Ex. E at 558-59 (emphasis added).

Respondents contend, and this Court agrees, that this is an issue of state law and is therefore not cognizable in a federal habeas corpus proceeding. <u>See</u> Section VI.B. Even assuming that

---

[7] In <u>Brown v. State</u>, 719 So.2d 882 (Fla. 1998), the Supreme Court of Florida held that:  (1) when a criminal defendant offers to stipulate to the convicted felon element of a felon-in-possession of firearm charge, the court must accept the stipulation; (2) the State may place into record actual judgments and sentences of prior felony convictions without disclosure to the jury; (3) the defendant should be required to personally acknowledge the stipulation and voluntary waiver of the right to have the State prove convicted felon status; and, (4) once the status is established by stipulation, the judge may instruct the jury that it may consider that element proven by agreement of the parties.

Petitioner has raised an issue of federal constitutional dimension, Respondents contend, and this Court agrees, that this claim is procedurally barred because it was not raised in a procedurally correct manner. Response at 9.

There are two prerequisites to a federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." Upshaw v. Singletary, 70 F.3d 576, 578-79 (11th Cir. 1995) (citations omitted).

Procedural default may result from non-compliance with state procedural requirements. See Coleman v. Thompson, 501 U.S. 722, 729-30, reh'g denied, 501 U.S. 1277 (1991). "It is well-settled that federal habeas courts may not consider claims that have been defaulted in state court pursuant to an adequate and independent state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'" Mincey v. Head, 206 F.3d 1106, 1135-36 (11th Cir. 2000) (quoting Coleman, 501 U.S. at 750 and McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992)), cert. denied, 532 U.S. 926 (2001). See also Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may not review a claim that a

petitioner procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief), cert. denied, 526 U.S. 1047 (1999).

> A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) . . . . [W]here the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, Sykes requires the federal court to respect the state court's decision. Atkins v. Singletary, 965 F.2d 952, 956 (11th Cir. 1992), cert. denied, 515 U.S. 1165, 115 S.Ct. 2624, 132 L.Ed.2d 865 (1995); Meagher v. Dugger, 861 F.2d 1242, 1245 (11th Cir. 1988).

Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) (per curiam).

As noted previously, Petitioner raised this claim in his Rule 3.850 motion, and the trial court stated "[a]s this ground should, and could, have been raised on direct appeal, it is not cognizable in a post conviction motion." Ex. E at 559. Therefore, this Court should "apply the state procedural bar and decline to reach the merits of the claim." Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir.), cert. denied, 513 U.S. 1061 (1994). Thus, this claim has been procedurally defaulted.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] petitioner may gain federal review of an otherwise procedurally defaulted claim if he can demonstrate both cause excusing the default and actual prejudice resulting from the bar." Hill v. Jones, 81 F.3d 1015, 1022-23 (11th Cir. 1996) (citations omitted), cert. denied, 519 U.S. 1119 (1997).

"[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). Petitioner has not shown cause and prejudice, nor has he established that he meets the fundamental miscarriage of justice exception. Thus, this Court need not reach the merits of this claim.

31

Even assuming *arguendo* that this claim is not procedurally barred, the claim is without merit.   See Section VI.E., Ground Five; Response at 10.

## E. Ground Five

As ground five, Petitioner claims defense counsel were ineffective for failing to inform him of the stipulation to Petitioner's convicted felon status and for informing the jury, during closing argument, that there was a stipulation to "a prior conviction on a drug matter."[8]   Petitioner raised this ground in his Rule 3.850 motion.   After conducting an evidentiary hearing[9], the trial court adjudicated the claim on the merits.   In denying the claim, the trial court stated in pertinent part:

> [T]he Defendant's next argument is that his counsel was ineffective for failing to advise

---

[8] The State and the defense entered into a stipulation: The Defendant, Antonio Zynell Henderson, was at the time of this offense a convicted felon, was pronounced guilty as to that felony and had not previously had his civil rights restored as to that felony.  Tr. at 152.  In closing argument, defense counsel stated: "We've stipulated that Antonio Henderson did have a prior conviction on a drug matter a couple of years back and that is really not something that you should hold against him."  Id. at 229.

[9] Petitioner was represented by counsel at the evidentiary hearing, and Petitioner and his former trial attorneys testified at the hearing.  See EH Tr.  Gregory Kimball, who was admitted to the Florida Bar in 1979, testified that he and Kenneth Zolezzi "had tried several cases together successfully," and Mr. Zolezzi was "one of the best cross-examining attorneys around . . . ."  Id. at 624-25; http://www.floridabar.org; see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).

the Defendant of the stipulation prior to trial and of his right to waive his right to have the state prove that element beyond a reasonable doubt in accordance with <u>Brown v. State</u>, 719 So.2d 882 (Fla. 1998).

In <u>Brown</u>, the Florida Supreme Court held "that when requested by a defendant in a felon-in-possession of a firearm case, the trial court must approve a stipulation whereby the parties acknowledge that the defendant is, without further elaboration, a prior convicted felon." <u>Id</u>. at 889. The Court went on to explain that the defendant should be required to personally acknowledge the stipulation on the record and out of the presence of the jury. <u>Id</u>. Although the trial transcripts do not reveal that the Defendant personally acknowledged the stipulation to his convicted felon status on the record, he has failed to demonstrate any prejudice as a result. The Defendant never alleges he was not a convicted felon. Rather, he claims he did not authorize the stipulation and would have required the state to prove the element since the stipulation allowed the jury to infer the nature of the prior felony.

. . . .

In reading the Defendant's motion, it is apparent that the jury did not infer the nature of his prior felony. The Defendant complains in Ground two that his defense counsel mentioned his prior drug charge in closing arguments and the trial judge read the information which referenced the prior drug conviction prior to trial and allowed an un-redacted copy of the information to go back with the jury for deliberations. <u>See</u> portions of Trial Transcripts, Page 229, attached hereto as Appendix A. It appears the Defendant is arguing out of both sides of his mouth. He alleges his counsel was ineffective for referencing the prior drug charge, but in the next sentence claims that he wanted the state to prove the prior conviction so that the jury would know his prior conviction was

> only a drug-related offense and not a more
> serious felony.  As shown, the Defendant has
> failed to demonstrate with any reasonable
> probability that, but for counsel's alleged
> unilateral stipulation, the result of the
> trial would have been different.

Ex. E at 559.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).  At the evidentiary hearing, Mr. Kimball

testified as follows with respect to the trial strategy employed
when faced with the State's burden to prove the existence of a
prior conviction as an element of the offense:

> [T]he first thing [the jury is] . . . going to
> hear about your client . . . is that your
> client is a convicted felon. That's not a
> good way to start out and you need to deal
> with that hostile climate right off the bat to
> explain that, mitigate it, shift the focus
> away from that to the specifics of what your
> defense in this particular case will be.
>
> . . . .
>
> My recollection is that there were several
> prior felony conviction[s] where the State had
> Judgments and Sentences. I believe they were
> all out of Putnam County. They could have
> proved that he was a convicted felon, I
> believe several times over and our general
> thinking as a matter of trial tactics was that
> it was best to let that jury know early on
> that we did not represent a murderer, a
> rapist, or a dangerous violent type person,
> that it was drug related and that they needed
> to focus on the facts of this case and not
> have a dog and pony show about the State
> proving up in Court the prior convictions and
> making a big deal out of that. Or possibly
> the jury to speculate and conclude the worst,
> why would they be called in here to have trial
> on something then possibly adversely just
> speculate that Mr. Henderson was that big of a
> threat.
>
> So we dealt with it up-front.
>
> . . . .
>
> Yes, we did discuss that this was going
> to be handled in the manner that I just
> testified to, whether it was, hey, we're going
> to stipulate to, or we're going to do it this
> way. I don't recall exactly how it was put or
> what point in time it came up, but yes, this

was discussed and this was part of our
planning for the case.

. . . .

Like I just said, they could think that he is
a mass murderer or whatever, and in the scheme
of things for them to hear that it was just
drug related is a lot better -- or at least
that was our judgment, as [a] matter of
tactics -- then [sic] having them supposing or
guessing that it might be something a lot
worse and that's why he might have had a
firearm.

. . . .

But in this case, we were confident that
that [sic] could be proved by the State and
did not see any gain to be had by going
through the process of them putting it into
evidence when it was going to come anyway.

. . . .

[M]y recollection is that, of course, this was
discussed with Mr. Henderson and he agreed in
every respect with this strategy or tactic
that we were taking in the case.

. . . .

Yes, letting the jury know that he was a
convicted felon and it was because of drugs,
because they were going to be able to prove
out that he was a convicted felon anyway. And
we wanted to have them hear it from us, to be
candid with the jury and to explain what it
was for so they wouldn't suppose that it was
for something worse than that.

You always, as a trial strategy, try to
maintain your credibility with the jury and
concede weaknesses, but push hard on the
points that you want them to decide a case in
your favor on, and that's what we did.

EH Tr. at 626, 627, 628, 629, 630, 639.

Mr. Zolezzi also testified, at the evidentiary hearing, regarding the strategy of stipulating to the essential element of convicted felon status. <u>Id</u>. at 763-68, 785-87. Specifically, he described the strategy:

> The purpose of stipulating was that if we didn't stipulate, the state would probably well, not probably but the state would have had the burden to go forward with the certified judgment and sentence and bring in some individual probably. At least I used to as a prosecutor, a fingerprint expert, would set a role of prints and a magnifying glass and look at that judgment and sentence and right here on the witness stand look at that fingerprint, look at the roll of prints and say, they were one and the same. It's devastating. Well for the defense, it is.
>
> . . . .
>
> Juries love to see scientific evidence. Juries eat that up. When you do show and tell, Juries like to see the scientific part. They love the forensics of the trial. It's exciting to them. They get into that and you know, we have to overcome that momentum, as the defense attorney.
>
> . . . .
>
> You want the jury not to focus on that. That's almost ultimately, when push comes to shove, to be an exercise in futility. It's going to be a given. The less attention paid to that, then the less, the you know, the issue in this particular case but not that issue. The issue, did he know or possess or did he have knowledge of the weapons in that closet at Ms. Alexander's house. And that is essentially the theory.
>
> . . . .

> I do recall that we had a discussion that we
> believe and that we counseled with him that it
> was better to let the Jury know what he was
> convicted of and not let them speculate.  And
> my recollection is, the client agreed.
> Therefore, I didn't think it was necessary
> because we were telling him what he was
> convicted of, that we had the on the record
> colloquy.

Id. at 767-77, 787.  Given defense counsels' actions based on the record before this Court, defense counsels' performance was not deficient.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. This ineffectiveness claim is without merit.

### F. Ground Six

As ground six, Petitioner contends that defense counsel were ineffective for failure to investigate Sergeant Manderville, who participated in the execution of the search warrant on the night of Petitioner's arrest.  Petitioner raised this ground in his Rule 3.850 motion.  After conducting an evidentiary hearing, the trial court adjudicated the claim on the merits.  In denying the claim, the trial court stated in pertinent part:

> The Defendant also asserts that his counsel
> was ineffective for failing to conduct proper
> pretrial investigation by failing to
> investigate Sgt. Manderville, who participated
> in the execution of the search warrant on the
> night of the Defendant's arrest.  He claims
> that the Inventory and Return Report shows
> that this officer seized money from the
> Defendant found on him which would have
> contradicted the officers who testified at
> trial that the Defendant was only wearing
> boxer shorts when transported to jail.  A
> defendant['']s claim of ineffective assistance
> of counseled [sic] based on a failure to
> investigate witnesses must include: (1) the
> appellant's identification of the witness, or
> witnesses who would have testified; (2) the
> substance of the witness's testimony, and, (3)
> a description of the prejudice suffered due to
> the omission of the testimony.  <u>Tyler v.
> State</u>, 793 So.2d 137 (Fla. 2nd DCA 2001).
> Although the Defendant has established that
> Sgt. Manderville may have testified that $761
> in U.S. currency was found at the scene, no
> prejudice has been shown by the Defendant by
> the omission of Sgt. Manderville's testimony.
> Instead, there is only a conclusory argument
> that Sgt. Manderville would have contradicted
> the State's other witnesses.

Ex. E at 560.

As noted previously, upon Petitioner's appeal, the appellate

court per curiam affirmed the trial court's order.  Accordingly,

the claim was rejected on the merits by the state trial and

appellate courts.  Thus, this ground should be addressed applying

the deferential standard for federal court review of state court

adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law,

it is clear that Petitioner is not entitled to relief on the basis

of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. Petitioner testified, at the evidentiary hearing, that he informed defense counsel Zolezzi that Sergeant Manderville had "grabbed" Petitioner's pants off the floor of the apartment, searched the pants, found $761.00 in the pants' pocket and then gave the pants back to Petitioner to wear to the jail. EH Tr. at 714, 716. Defense counsel Zolezzi, at the evidentiary hearing, testified regarding Petitioner's claim that Sergeant Manderville would have testified about Petitioner's wearing his pants to the jail.

> I don't remember what Ken Manderville's role was, to tell you the truth. I remember talking to a police officer, whom I believe was the transporting officer, do not remember the name. And if memory serves me, that officer, as they frequently do, doesn't remember or didn't have a recollection one way or the other. Ken Manderville, I don't remember what his role was.
>
> . . . .

I do remember making phone calls, trying to find out who had made a transport and I know I didn't get a positive or a negative, from the person that I talked to as to whether he had pants on or not.  Who that person was, I don't know.  I dropped that -- that lead just kind of fizzled out.

. . . .

I can't even see at this point, you know, even at this point now.  I can't even see that was [g]ermaine to the issues being tried.  In fact, I didn't have, whether it was a fact or not, any real problem with the fact that he might have gone to jail in his boxer shorts. If the police would have, you know -- his testimony or his version of what he told us occurred, was that the police wanted him to wear the clothes in the closet and he refused and that he instead said he would wear his pants.  Whether he did or didn't would have made no difference to the issue, which was that those weren't his clothes.  One of the arguments we made is that they weren't his.

Id. at 774-75.  Given defense counsels' actions based on the record before this Court, defense counsels' performance was not deficient.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner acknowledged, at the evidentiary hearing, that defense counsel argued to the jury that Petitioner did have pants on when he went to the jail.  Id. at 740, 742; Tr. at 239-40.  Further, contrary to Petitioner's contention, the deposition of Sergeant Manderville reflects that his testimony would not have helped Petitioner

41

Henderson's defense.   Ex. E at 385-91.[10]   Thus, Petitioner has not
shown that a reasonable probability exists that the outcome of the
case would have been different if his lawyers had given the
assistance that Petitioner has alleged they should have provided.
This ineffectiveness claim is without merit.

## G. Ground Seven

As ground seven, Petitioner claims that defense counsel were
ineffective for failure to file a motion to disclose the
confidential informant's identity and failure to file a motion to
suppress the evidence.   Petitioner raised this ground in his Rule
3.850 motion.   After conducting an evidentiary hearing, the trial
court adjudicated the claim on the merits.   In denying the claim,
the trial court stated in pertinent part:

> Regarding the confidential informant[']s
> identity, the Defendant alleges that his
> attorneys failed to file a motion to disclose
> the identity of the informant.   According to
> Harklerod[e] v. State, the State has a
> privilege to withhold disclosure of the
> identity of persons furnishing information
> regarding crimes.   Harklerod[e] v. State, 567

---

[10] Sergeant Manderville, a member of the SWAT team on the night
of Petitioner's arrest on February 18, 1999, testified that he did
not recall whether Petitioner Henderson was arrested while wearing
his boxer shorts or long pants.   Ex. E at 389.   He noted that the
Inventory and Return Report reflected that he found $761.00 in U.S.
currency on Petitioner's person that night; however, the report
does not state where the money was found on Petitioner.   Id.   He
concluded that there really was not anything outstanding or
different about the serving of this particular search warrant that
night.   Id. at 390.

So.2d 982 (Fla. 5th DCA 1990).[11]  In order to
overcome this privilege, the Defendant must
allege a legally recognized defense to the
crime charged and support the defense with
sworn evidence.  The Court finds that the
Defendant failed to do so.  Regarding the
failure to suppress evidence claim[,] the
Court finds that the Defendant has failed to
offer any proof that the search warrant issued
was invalid.  In fact, during the evidentiary
hearing, the State offered evidence that the
issuance of the search warrant was based on a
controlled buy in the residence, which the
Defendant could not refute.  As a controlled
buy is a basis for a search warrant, the
Defendant is not entitled to relief on this
ground.

Ex. E at 560-61.

As noted previously, upon Petitioner's appeal, the appellate
court per curiam affirmed the trial court's order.  Accordingly,
the claim was rejected on the merits by the state trial and
appellate courts.  Thus, this ground should be addressed applying
the deferential standard for federal court review of state court
adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law,
it is clear that Petitioner is not entitled to relief on the basis

---

[11] In <u>State v. Harklerode</u>, 567 So.2d 982 (Fla. 5th DCA 1990),
the District Court of Appeal held that the defendant was not
entitled to the disclosure of the identity of the confidential
informant.  Regardless of whether the disclosure of the identity of
the confidential informant is sought because it is necessary to the
defense or on due process grounds, the burden is clearly on the
defendant to establish an exception to the nondisclosure privilege.
The Defendant seeking disclosure of the confidential informant's
identity must not only allege a legally cognizable defense, but
must also support the defense with sworn evidence.

of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. At the evidentiary hearing, defense counsel Zolezzi testified about the controlled buy at the Alexander residence, which was used as a basis to obtain the search warrant in this case. EH Tr. at 775.

> I remember during the deposition, the officers who obtained a [search] warrant talked about how the informant was met at a pre-arranged location, given the buy money, searched. They observed the informant rode [sic] a bicycle to the apartment complex. They stayed across the street. Again if memory serves me, in the parking lot of the doctor's office, keeping that individual under surveillance the entire time. The individual staircase is in the middle of the apartment complex and upstairs and there are apartments across with an open balcony and the defendant or Ms. Alexander's apartment was at one end of the building. I don't know how many apartments are there. I don't have that recollection.
>
> And that the informant went up, they had a wire on him but they didn't record it. Talked to a female who indicated that -- I don't' know if they said it was Tony or whoever he was asking for, wasn't there, to wait and he would be back. As I recall, the officer said the individual went to the foot

of the stairs, waited a period of time.  The
individual whom they indicated was Tony
Henderson, they knew from, at least at that
point in time, knew to be Tony Henderson,
arrived, talked with the individual.  I want
to think it was at the bottom of the stairs,
went back up and went into the apartment, out
of sight now, with the confidential informant.
There was no exit at any other location.  We
determined that by the deposition that the
individual who was making the controlled buy
and then exited the apartment after some
period of time.  He left under constant
surveillance, back on his vehicle, whether it
was a bicycle or foot, I'm not real certain,
went back to the pre-arranged second meeting
place, at which time he turned over the drug
and verbally told him that it was the
defendant that had made the sale.

. . . .

It sounds like a routine controlled buy.
I would never in a million years be able to
get the State to reveal the name of that
confidential informant unless the State
charged that sale charge.  Then they would
have to have had that informant testify about
the details of the sale.

EH Tr. at 776-77, 596-98.  Defense counsel affirmed that he did not
have grounds to file a motion to disclose the confidential
informant and further did not have grounds to file a motion to
suppress.  Id. at 778.  He concluded: "If it's a frivolous motion,
I'm not going to file it."  Id.  Given defense counsels' actions
based on the record before this Court, defense counsels'
performance was not deficient.

Even assuming arguendo deficient performance by defense
counsel, Petitioner has not shown prejudice.  Thus, Petitioner has

not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. This ineffectiveness claim is without merit.

## H. Ground Eight

As ground eight, Petitioner claims that defense counsel were ineffective for failure to properly investigate and file a motion for recusal. Specifically, Petitioner contends that defense counsel should have filed a motion to recuse Judge Boyles (the trial judge) because Judge Boyles entered the order to release Lamar Evans from incarceration on the condition that Evans would perform duties as a confidential informant to assist in obtaining drug arrests. See EH Tr. at 721-23. Apparently, Petitioner believes that Judge Boyles released Lamar Evans to act as a confidential informant against Petitioner. See id. at 722.

Petitioner raised this ground in his Rule 3.850 motion. After conducting an evidentiary hearing, the trial court adjudicated the claim on the merits. In denying the claim, the trial court stated in pertinent part:

> Defendant asserts various ineffective assistance claims that deal with his attorney's failure to investigate various matters, including the bias of the trial judge[.]
>
> . . . .
>
> [T]he Court finds that the Defendant has failed to show through competent testimony

> prejudice on the part of the trial judge.[12]
> Absent such a showing, relief cannot be
> granted on this ground.

Ex. E at 560.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  At the evidentiary hearing, defense counsel Zolezzi testified:

---

[12] A motion to disqualify shall show "that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge . . . ." Fla. R. Jud. Admin. 2.160(d)(1); Fla. Stat. 38.10.

47

> I was unaware of Lamar Evans being
> released by Judge Boyles, until Mr. Haenftling
> [the Assistant State Attorney at the Rule
> 3.850 hearing] told me about that.  I didn't
> know that -- I knew there was something about
> Charles Washington, Charlie Washington, but
> putting two and two together, I believe at
> some point in time we had been told that Mr.
> Evans had been the informant.  I would not --
> even assuming that I knew about it prior to
> trial, the fact that Judge Boyles released
> someone at the request of law enforcement to
> act as an informant would not have run up a
> red flag where I would want to recuse the
> Judge to show that the Judge was biased
> unfairly against a particular Defendant. That
> would have been absurd.

EH Tr. at 607-608.  Defense counsel Zolezzi did not recall having

any discussion with Petitioner regarding the recusal of Judge

Boyles.  Specifically, Defense counsel Zolezzi stated that he

"definitely wanted" Judge Boyles to try the case.  Id. at 778.

Defense counsel explained that Judge Boyles was merely performing

his duties as a judicial officer and there was no showing of any

bias against Petitioner.  Id. at 779.

> I don't think that would have any bearing
> because every Judge that ever does a search
> warrant involving a confidential informant, it
> says this confidential informant made a buy
> from X and we want a search warrant and then
> the charge ends up in front of that Judge,
> that same argument would be raised.  The Judge
> is just performing a judicial, supposedly
> neutral magistrate decision in the process.

Id.  Defense counsel Kimball testified that he was not aware at any

time that Judge Boyles had released someone who was believed to

have been a confidential informant against Petitioner.  Id. at 632.

48

He opined that such information (that he never had) would not be a sufficient basis for a motion to disqualify Judge Boyles. Id. at 633. Given defense counsels' actions based on the record before this Court, defense counsels' performance was not deficient.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Thus, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyers had given the assistance that Petitioner has alleged they should have provided. Petitioner acknowledged that he had no independent evidence showing that Judge Boyles released Lamar Evans from incarceration to specifically target Petitioner. Id. at 748-49. This ineffectiveness claim is without merit.

### I. Ground Nine

As ground nine, Petitioner claims he was denied a fair trial due to the State's failure to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83. Specifically, Petitioner claims that the State willfully suppressed exculpatory witness Lamar Evans' statement to Mr. Wood (an Assistant State Attorney) that he would testify that the men's clothing found in Ms. Alexander's apartment the night Petitioner was arrested did in fact belong to Mr. Evans. Petitioner raised this ground in his Rule 3.850 motion. After conducting an evidentiary hearing, the

trial court adjudicated the claim on the merits.  In denying the claim, the trial court stated in pertinent part:

> The Defendant alleges that the State failed to disclose exculpatory evidence during pretrial discovery, specifically, the bias of a witness for the State.  The test to determine the effect of the State's failure to disclose exculpatory evidence is whether there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.  The favorable evidence that the Defendant claims would have changed the outcome of the proceeding is a statement from Mr. Evans to the State regarding clothing found in the apartment.  The Court finds, after the evidentiary hearing, that there is no direct testimony that shows the State possessed the evidence that the Defendant claims.  Further, even if it is assumed that the State possessed such evidence, the Court fails to find that there was a reasonable probability that had such evidence been disclosed, the result of the trial would have been different.

Ex. E at 561.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, this ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim

50

were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The Eleventh Circuit has set forth the applicable law governing a claim under Brady v. Maryland.

> In Brady v. Maryland, the Supreme Court placed an affirmative duty on the prosecution to reveal any "evidence [that] is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196-97. This duty covers "[i]mpeachment evidence . . . as well as exculpatory evidence." United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). The Brady rule applies to evidence possessed by the prosecution team, which includes both the investigators and prosecutors. See United States v. Meros, 866 F.2d 1304, 1309 (11th Cir. 1989).
>
> Three elements establish a Brady violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice.[13]   See Kelley v. Sec'y for Dep't

---

[13] Most recently, the Eleventh Circuit has restated the elements necessary to establish a Brady violation. The petitioner must prove that (1) the government possessed evidence favorable to the defense; (2) the defendant did not possess the evidence and could not have obtained it with any reasonable diligence; (3) the government suppressed the favorable evidence; and, (4) the evidence was material in that a reasonable probability exists that the outcome of the proceeding would have been different had the

of Corrs., 377 F.3d 1317, 1354 (11th Cir. 2004) (citing Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999)). Brady does not require that the prosecution "deliver [its] entire file to defense counsel, but only [that it] disclose" material evidence. Bagley, 473 U.S. at 675, 105 S.Ct. at 3380 (footnote omitted).

Evidence is prejudicially material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1565-66, 131 L.Ed.2d 490 (1995). To meet this standard, "the defendant does not need to demonstrate that, after discounting the inculpatory evidence in light of the evidence in question, there would not have been enough evidence to convict him." Taylor v. Singletary, 122 F.3d 1390, 1395 (11th Cir. 1997) (citation and quotation omitted). Instead, the defendant must show that the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id.

Stephens v. Hall, 407 F.3d 1195, 1203 (11th Cir.), cert. denied,

126 S.Ct. 278 (2005).

---

evidence been disclosed to the defense. United States v. Schier, 438 F.3d 1104, 1106 (11th Cir. 2006) (citation omitted); LeCroy v. Sec'y Fla. Dep't of Corr., 421 F.3d 1237, 1268 (11th Cir. 2005) (citation omitted), cert. denied, 126 S.Ct. 1458 (2006).

At the evidentiary hearing, Garry Wood (an Assistant State Attorney and Deputy Division Chief in the State Attorney's Office in Palatka, Florida, at the time of Petitioner's trial) explained his conversations with Lamar Evans prior to Petitioner's trial.

> I don't recall talking about clothing. There was a conversation about a gun but I don't recall anything about clothing.
>
> . . . .
>
> If I recall, at the time I talked to Lamar I think his location had changed and Ms. Moore [the prosecutor at Petitioner's trial] was or needed to get [a] hold of him. I had a contact number for him and I called him and just told him that his name had come up as a possible witness in Mr. Henderson's case and that he may be, as I recall, it's possible he was going to be a defense witness to deal with whose gun was located inside the house.
>
> . . . .
>
> I don't recall there being any conversation about there being clothing with Mr. Evans. I don't recall that being an issue in the case, at the time I talked to Mr. Evans.
>
> I would have relayed that information to Ms. Moore and certainly, she would have been responsible to relay it [to] defense counsel.

EH Tr. at 790-91. He did recall relaying the information regarding the firearms. Id. at 792. Mr. Wood acknowledged that, if Mr. Evans had stated to him the clothing found inside of the apartment was in fact Evans' clothing, he would have relayed that information to the prosecutor and the prosecutor would have been under a duty to disclose that to the defense. Id. at 791-92.

Defense counsel Zolezzi, at the evidentiary hearing, testified that, even if he had known who the clothing belonged to or had put Lamar Evans on the stand, it would not have changed the ownership of the firearms. <u>Id</u>. at 780. He explained:

> That would explain the clothes. The clothes were explained by Tameka Alexander. Whether she was believed or not by the jury, I can't second guess that until the witness takes the stand or folds up or holds the wind in their sails and does a fine job. All of that is a credibility of the witness issue; the sands change as the trial progresses. Nobody and [sic] what we tried to do more, was put the fact that the police should have done a little more checking.
>
> They should have seized that clothing. They should have brought that clothing into the courtroom. They should have done that old, does the glove fit and have Antonio Henderson put that clothing on in the courtroom and they didn't. So we attacked the police. There's an old adage, don't ever ask a question you don't know the answer to because you're going to get burned nine times out of ten but you can always attack the police for what they didn't do.

<u>Id</u>. at 780-81.

At the evidentiary hearing, Lamar Evans testified that he did not know if he had left any of his clothes at Ms. Alexander's apartment. <u>Id</u>. at 693-94. He noted "I could have." <u>Id</u>. at 694, 697. He was "not sure" whether he had or had not left some clothes at her apartment. <u>Id</u>. at 694. He never went back to Ms. Alexander's apartment to look for any clothing; he did not recall that any of his clothing was missing; and, when he moved out, "[t]o

54

the best of his ability," he had accounted for all of his clothing. <u>Id</u>. at 698-99.   He concluded that he <u>never</u> told Mr. Wood that he had left clothes in Ms. Alexander's apartment.   <u>Id</u>. at 697.   Ms. Alexander did testify at the trial that the clothing found in her apartment did not belong to Petitioner, but rather to Lamar Evans. For these reasons, ground nine is without merit.

### J. Ground Ten

As ground ten, Petitioner claims that his sentence is illegal because the trial judge's written sentence (Ex. A at 126-135, Judgment), which imposes an eighteen-year habitual felony offender sentence for possession of a firearm by a convicted felon, fails to comport with the trial judge's oral pronouncement of an eighteen-year sentence without the habitual felony offender designation (<u>Id</u>. at 149, Transcript of the February 17, 2000, Sentencing Hearing, at 18).[14]   Respondents contend, and this Court agrees, that this is a state law sentencing issue and is not cognizable on federal habeas corpus review.   Response at 12-13; Section VI.B., Ground Two.

Petitioner raised this ground in his Rule 3.850 motion.   After conducting an evidentiary hearing, the trial court adjudicated the claim on the merits.   In denying the claim, the trial court stated in pertinent part:

---

[14] The sentencing hearing transcript begins at page 149 of exhibit A.   Thereafter, the transcript contains page numbers in the upper right-hand corner of each page.   Therefore, those page numbers (1-19) will be utilized for citation purposes.

The Court of Appeals for the Fifth District has stated that "We do not find any Florida appellate cases in which the court has required a sentencing judge to use the magic words, "habitual felony offender sentence" in order to effectuate a legal sentence where it is obvious the trial court intended to and did impose an habitual felony offender sentence." Yates v. State, 823 So.2d 273 (Fla. 5th DCA 2002).  In Yates, the Defendant claimed that even though the trial court properly found he qualified as an habitual felony offender, because it did not expressly say it was sentencing him as an habitual felony offender, this omission renders his sentence illegal. This case is directly on point.  The Court properly made the determination that the Defendant was an habitual felony offender, and although the Court did not expressly say it was sentencing him as such, this does not render his sentence illegal.  See Portion of Sentencing Transcript, page 9, attached as Appendix B[15]; O'Neal v. State, 2003 Fla. App. LEXIS 883 (Fla. 2nd DCA 2003) "A sentencing judge is not required to use the magic words, 'habitual felony offender sentence' in order to effectuate a legal sentence where it is obvious the trial court intended to and did impose an habitual felony offender sentence."[16]

Ex. E at 561-62.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order.  Accordingly, the claim was rejected on the merits by the state trial and appellate courts.  Thus, this ground should be addressed applying

---

[15] See Ex. A at 149, Transcript of the February 17, 2000, Sentencing Hearing, at 9.

[16] See O'Neal v. State, 862 So.2d 91, 92 (Fla. 2nd DCA 2003) (quoting Yates v. State, 823 So.2d 273, 274 (Fla. 5th DCA 2002)).

the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Based on a review of the sentencing transcript and the written pronouncement of sentence, it is clear that the trial judge intended and did sentence Petitioner to an eighteen-year term of incarceration as a habitual felony offender.  The trial judge, during the sentencing hearing, stated:  "Based on the evidence presented, I will adjudicate him an habitual offender."  Ex. A at 149, Transcript of the February 17, 2000, Sentencing Hearing, at 9.  The trial judge informed counsel that "you have the opportunity to present to the Court any matters you wish, either in bar or mitigation of sentence."  Id.  Both defense counsel and the prosecutor acknowledged the trial judge's adjudication of Petitioner as a habitual felony offender.  Id. at 10, 14, 15.  The written pronouncement of Petitioner's sentence states that Petitioner's sentence on count three (possession of a firearm by a

convicted felon) is a term of eighteen years of incarceration as a habitual felony offender. <u>Id</u>. at 126-35. Petitioner's ground ten is without merit.

### VII. Conclusion

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of October, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

sc 8/17
c:
Antonio Zynell Henderson
Ass't Attorney General (Corrente)

58